Yes, sir. Good morning, your honors. May it please the court. My name is Kevin Mahoney, and I represent the appellant in this matter. The appellant is, before this court, seeking relief from the district court's granting of a motion to dismiss based on res judicata. The issue in this case, your honors, is that defendants settled a class action previously under California Code of Civil Procedure 382. They never alleged any claims under the FLSA. They never alleged any federal claims at all. Subsequently, defendants reached a settlement with the class. My client did not opt out and ultimately filed. And didn't object. She did not object, your honor. And subsequently filed. And didn't appeal. And did not appeal. So she subsequently. And you understand that I have to apply California's res judicata rules to determine the effect of this judgment. Correct, your honor. Yes, that is correct. I just want to make sure we got this platform now. We've got a high hurdle to overcome, because you're starting to put the platform down. Yes. So the three principles in applying California res judicata is really the same claim, same party, and a final determination on the merits. Now, is it not entirely obvious that a settlement of this kind is a final adjudication of the merits, but California law is clear that it is, right? Yes, your honor. And I will not make the argument at that point. I think the issue is. I find it confusing, because it seems to me really to play better as a waiver argument than as a res judicata argument. But let's go forward. So our issue, or the appellant's issue in this case is really whether or not it's the same claim and or the same party. Defendants rely on Bill Aker for the premise that, in fact, you can bind or bound a absent party in a opt-out class action, which is absolutely the law in California. The question here is whether or not the appellant's right or FLSA action can be waived. Now. Well, let's take. Suppose this wasn't an FLSA action. Yes. It was an individual tort claim or something that couldn't have been asserted as a class action. But nonetheless, it was covered by the release. Yes. Then what? I mean, why is your client any better off than if she had just had a claim all by herself or if she is complaining that the release is too broad, essentially? Well, Your Honor, I think the key word is the release. In the release in the Diegas case, there is no mention of federal law or FLSA. So you think that matters? If it's specifically that the FLSA would have been different? I do, Your Honor. Why? Well. I mean, it encompassed the same time period and the same kinds of claims, right? Overtime and minimum wage. Well, Your Honor, if we look at what the FLSA was meant to do, it was meant to protect employers. The FLSA was meant to protect employers from litigation requiring an active opt-in. So when the FLSA was brought about, Congress specifically wanted to limit the liability. Well, I understand that. But you began with the proposition that this release didn't cover it. That's a different question. Well, so if this is a right that the appellant has, a statutory right. All right, well, but she also had a right to file a tort claim by herself, complaining that there was intentional infliction of emotional distress because of the way she was paid. But this thing precluded. And that wouldn't have been subject to a class action. But this precluded that. So would she be in the same position then? Well, Your Honor, I just don't see it that way. Because once again. Well, I answer her question because I think it's very important. Her question goes to the merits of what you're arguing. That's why I don't need to say much except please answer. She's saying, let's get it out of the FLSA bailiwick. And let's put it in another bailiwick, which is a tort claim, which she has to bring. And the release says, released, relinquished, and discharged. Doesn't say all state claims. Doesn't say all claims anything about that. It says all claims in accordance with the terms of the agreement. And then it says, all claims. Now we're talking about what release claims are. That were or could have been pled based on factual allegations in the complaint without limitation. Claims for unpaid wages and overtime. Correct. And so you're saying, well, my client released. My client, I understand they released all claims. But they didn't release all claims. I'm saying they didn't plead FLSA. Oh, what? It doesn't say about pleading. It's about the release. Well, I'll cite Edwards, the author. So you really think you would have a different argument if it said FLSA? I mean, I thought you had a principled argument, which is that you can't release FLSA. That's what I'm trying to get to, Your Honor. That's a different question. If the FLSA is a statutory right that cannot be waived, how you now take a settlement agreement that gives no notice that the absent class members. Oh, now, just a minute, no notice. Your client had all the notice needed. Correct, Your Honor. And didn't do anything to get out of it or object to it. But, Your Honor, the notice. Knowing that they would be thinking about filing a federal claim that all claims might have released. But, Your Honor, as you just said,  of the claims in that case. No notice of any notice of FLSA. No notice of the release. It doesn't say all the claims in this case at all. Well, the release is very broad. And I think. Correct. Exactly. Yeah. And I think, Edwards, the author says, if the FLSA is a non-waivable statutory right, well, I'm equating. If the FLSA is a non-waivable statutory right, just like California Labor Code 2802, you cannot extinguish it. And that's the specific language from Edwards, the author. Wait a minute. Are you now relying on the substantive non-waivability of the FLSA or on the opt-in, opt-out feature? I'm relying on the non-waivability of it. And there's two. Well, your briefs, essentially, are all wrapped up with the opt-in, opt-out. Well, yes, Your Honor. Because, once again, the FLSA operates as an opt-out. And what we're saying is this. First, the plaintiff, in that case, never filed a FLSA action. But all she had to do was two things. She could have opted out and then gone and filed her FLSA claim. And she could have made a campaign with a whole bunch of other people saying, everybody should opt out because I'm going to file an FLSA. Or she could have objected on the ground that it shouldn't have covered FLSA, that the release shouldn't cover FLSA claims. And there is some support for that proposition. There are some courts that have held, for the reasons you're stating, that it shouldn't cover it. But she didn't do that. And it does cover it. So it's a different problem. The question is whether, once it does cover it. I understand you're saying it doesn't. But it's hard to figure out why it doesn't. On its face, it covers it. And once it covers it, why isn't she then have a res judicata slash release waiver problem, even if, in the first instance, it shouldn't have been done that way? Your Honor, if the court finds that this release covers it, then my argument is failed. Well, given Bill Akers, I tried to find a way. Because I know FLSA claims are pretty important. And I know that you have a different flavor for getting in or out. I know that. But when I look at Bill Akers, which is the California law. And that's why I put the California law to you to begin with. We've got to go on California law. It says, if the matter was within the scope of the action, related to the subject matter, and relevant to the issues, so that it could have been raised, then it's conclusive. Correct, Your Honor. But in Bill Akers, what we had was a case based on the California labor code, which was the underlying case. Bill Akers now comes along. All you're saying is because it had to do with two state issues, then it could be covered. But it has to do with a federal one. It doesn't matter? No, Your Honor. What I'm saying is the underlying case was based on the labor code. Bill Akers comes by. He now files a PAGA action. The reason the court said. They're both California. Correct. But the reason the court found that Bill Akers was related and could have been encompassed within the underlying case was two reasons. Number one, the underlying claim asked for penalties. Bill Akers was seeking civil penalties. So the underlying claim in the, I forgot the underlying case. Do you dispute that the complaint below sought recovery for unpaid overtime and minimum wages in the same period and against the same defendant as Diegas? I'm not. But the other point I want to make about it. I mean, I'm just saying it's the very same claim that Diegas was faced with. I'm not disputing that. Well, what I'm saying is the other issue of Bill Akers that they actually had a release that released federal claims. In Bill Akers, in the other case that defendants cite, which was the Richardson v. Wells Fargo, all of these cases have specific language that releases the federal claims. It's specifically the release. The notice all says federal claims are released. My understanding is, I mean, aside from the fact that I don't know why all claims doesn't include federal claims, that you were in a dialogue, or somebody representing her was in a dialogue with the lawyers at the case at the time they were writing this release. And you knew perfectly well that it was going to cover the FLSA. Your Honor, what you're reading in the record is a self-serving declaration by a defense counsel. What does a self-serving declaration mean? Well, because he says that he had a conversation with a law firm. Right, that's not self-serving. I mean, any declaration is self-serving. But he says he had a conversation. Yeah, he says he had a conversation, but that wasn't the case. Did you say that there was a contradictory declaration? I believe we submitted a declaration to that effect. But the bigger issue that I want to raise with the Court is all of the cases that come before us all have the specific language that you are releasing federal claims. Defendant cannot point to a case to support their position on res judicata. So your whole case turns on that. And if it had said, we're releasing the FLSA, you'd be happy? We'd be done. We'd know that. Well, then you've given away your case, to be honest. How? Because the issue, I thought, was whether you can do that and be bound, given the difference between the opt-in and the opt-out. You're now saying it just wasn't clear enough. No, Your Honor, what I'm saying is there's two differing opinions on the opt-out procedure. Versus the opt-in. Some case law said that you can, in fact, release FLSA claims in a opt-out class action. And other courts have held that you cannot. Well, suppose the answer is you cannot, but they did. Isn't that still res judicata? I'm sorry. Suppose you can't, but they did. Why isn't that still res judicata? Well, yes, you would have a final judgment on the issue. But what I'm saying here is they didn't, because it's not there. Thanks. Your time is up. Thank you, Your Honor. Good morning. May it please the Court. My name is Inez Monti, and I represent PLS Check Cashers. I'm the defendant in action below. As you noted, Ms. Rangel had notice of the class action in the Diegas matter. She had counsel while she received notice of the class action in the Diegas matter. She was provided ample warning what might happen if she didn't decide to opt out of that class action. She chose not to do so for whatever reasons. And now she seeks to re-litigate the exact issue that was settled and resolved. Well, presumably the reason is because she wants other people to be able to join her. She could have saved herself, but it would have been hard to save anybody else unless they also opted out. Well, she could have opted out and then filed a new class action under the FLSA, a collective action, and asked that judge to issue notice to all the potential members. It could have been brought to the attention of the state. Wait a minute. You're giving away your case. I don't want to do that. I should sit down. Because your position needs to be that she couldn't cover anybody who didn't opt out. That's right. Right. So therefore, she wouldn't have had anybody, from a lawyer's point of view, she wouldn't have anybody to sue on behalf of, probably, unless she raised some large fuss and got other people to opt out. And then it wouldn't be a very viable case because there wouldn't be any money in it. That's right. Your Honor, ultimately, the case had been resolved and had been paid for with a large settlement that a court took the care to review to make sure it was fair, provided everyone an opportunity to appear at a fairness hearing. And after the fact, a year after the fact, plaintiffs filed a new complaint. What about the relevance of Matt Tushita in the following way? As I understand it, not really directly on the question of superseding the federal fair faith and credit, but rather that Matt Tushita started with the question that, as here, but more so, the release seemed broader than what could be litigated in the action where the release was entered because there was no jurisdiction in the state court. And to discover, the court, as I understand it, said, well, whether or not you can do that isn't a federal constitutional question. It's a state law question. And they went on to show that Delaware allowed this. What do we know about whether California allows this? Would California allow, regard as ratio to CADA, a release with regard, for example, to something, a federal issue as to which there was exclusive jurisdiction in federal court? Is there any case law on that? I don't know of any case law on that. I know of an unpublished California decision that allowed the release of federal claims in state court that we cited in our brief, but it is unpublished. Well, I'm not talking about federal claims in general. Of course, you could release federal claims. The question is whether you can release federal claims that couldn't have been brought, this one could be brought in state court, but not the way it was brought. Right? Correct. And in that way, it's less of a jar than Matrusica. But what about, is there any California law about how far you can go in releasing claims that couldn't have been properly before the state court? Well, I think the California jurisprudence is that the cases have to involve the same injury for race due to CADA purposes. I understand, but I'm asking a specific question. Well, I guess I'm misunderstanding. My point is that regardless of whether it was a federal claim that could only be brought in a federal court in California, if you release that claim as part of some litigation that involved the same injury, then it doesn't matter whether it was a claim that could only be brought in federal court. This is why I say that race due to CADA is a bad fit, because ordinarily, race due to CADA only, I mean, suppose here there was no release. Then what? Suppose there'd been no release. Would the FLSA claim have been precluded? If there had been no release, the FLSA claims would have been precluded in any case because they could have been litigated. Well, that's the point. It couldn't have been litigated, at least not the way it was litigated. Well, they could have been litigated. You could have a hybrid action. You could add a claim. You could add the, I mean, that's how they're always litigated when you want to capture other people. Most of the time, they get litigated under state law because it provides better protection, longer statute of limitation, more protections, generally. In California, you get overtime if you work more than eight hours a day. That's not something she would get in the FLSA action. None of those class numbers would get. If they had put the federal claim, FLSA claim into the state action, and Ms. Rankle didn't opt in, would she then be precluded? I think she would be precluded. I think she would be precluded under the rationale in Richardson. If she didn't opt out of the state claim, she would still be precluded because the substance of the FLSA rights are the substantive rights, not the procedure. I mean, the Supreme Court just recently decided that you can compromise all of your FLSA claims to go in a collective action by being required to agree to arbitrate those individually in EPIC systems. So that right to consent is not a true right or it's not a substantive right. It's a procedural requirement that was put into place to try to curb litigation. And there are other avenues available to employees which were used here. And there's no constitutional due process reason that this release shouldn't be held to bound Ms. Rankle. She knew what was coming. She could have taken several different actions to preserve rights if she believed those were important to preserve. She didn't. She rested on her laurels for over a year and now purports that she wants to bring this, not just for herself, but for all those other people out there, the poor folks, who she let their statute of limitations keep running because none of their statute of limitations get expanded because of the consent opt-in procedure. That procedure is designed not to do what Rankle wants it to accomplish here and expand the scope of class actions. It's designed to eliminate unnecessary class actions and needless litigation on behalf of litigants that don't care, that don't want to recover $10 in alleged unpaid overtime. And this, a ruling in favor of Rankle in this case, opens everything wide open, every person who has settled a state class action, or an individual action for that matter, and gotten paid, gets to say, well, they didn't have their full right. As you said yourself, you could fix that by putting the FSA claim into the state action. Yes, you can do that. But I'm saying, what if you have state actions out there, which we do, where litigants have only litigated under the labor code in California? All of those state actions are now, whether they're individual, whether they're  And so, if you have a new promise that's being presented by Rankle, that there's something super special about the consent opt-in requirement, that means that the only place and only way you can resolve your FLSA claims is by suing under the FLSA. You just open everything wide up. There are a fair number of courts, but if she had objected and said, this shouldn't cover the FLSA claim, there are at least some courts that would have bought that. There are. I don't think they would buy it anymore after EPIC systems. I don't think that that's, I mean, in my view, the principle after the decision, the Supreme Court's decision in EPIC, was that you can compromise. You don't have a sacrosanct. You don't have an NLRA right not to give up your right to proceed as a class. But I don't really see the overlap very much. Well, the overlap is that the FLSA was the underlying statute, that they were trying to sue under in EPIC. They wanted to bring collective actions under the FLSA and said that that was prohibited because of the NLRA. That was, and it wasn't. That's not a substantive right to sue collectively. It's not protected under the NLRA, which was the novel new argument presented and the position the Department of Labor took in 2012 and since. But the court rejected that. But you've been asked for an intervention law. Yes. There's still, for the reason we already discussed, she would prefer to bring a class action, but the pivotal question is whether it can bind her. And that has nothing to do with EPIC. Well, whether the release can bind her, it's well settled in California law that absent class members are bound by releases. It's the only reason people settle class actions. If every absent class members. This is special because I didn't opt in. That's her story. Well, but that's the circular part of it. I mean, it begs the question. If the FLSA is not set up to give you extra secret powers in litigation, it doesn't allow you to avoid full faith and credit act of Congress. It doesn't allow you to bypass race judicata principles. Nothing in the act. It's very short. Section 216B. It only establishes an opt-in requirement that got added after the fact to limit and curb the use of this mechanism. Okay. Your time is up. Thank you very much. Sir, I think you have a little time or we're giving you a little time. I'll just end on this. The settlement agreement, the notice was crafted by counsel. They're sophisticated. This would have been over had they released the claims. What defendant now wants this court to do is basically say, settlement agreements will mean whatever we want them to mean, even though we don't put the language in. Thank you, Your Honor. Thank you. All right. The case of Rangel versus PLS check cashers is submitted. And we'll go to the last argued case of the day, United States versus Vasquez.
judges: Berzon, N.R. Smith, Nye